Charles GRIFFIN *v.* STATE of Arkansas

CR 91-164                    823 S.W.2d 446

Supreme Court of Arkansas
Opinion delivered January 13, 1992

Baim, Gunti, Mouser, DeSimone & Robinson, by: Greg N. Robinson, for appellant.

Winston Bryant, Att'y Gen., by: Elizabeth A. Vines, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This appeal arises from Charles Griffin's convictions of rape and burglary. He contends the Trial Court erred in: (1) allowing his prior convictions of kidnapping, theft, and burglary to be used for impeachment purposes, (2) not allowing him to waive the habitual offender bifurcated trial procedure, and (3) failing to grant a mistrial when a witness's testimony indicated Griffin was incarcerated at the Department of Correction. We affirm the conviction.

There was evidence from which the jury could have concluded the following facts: Tracy Haynie and a friend were standing outside Haynie's home when Griffin, who was traveling on foot, asked to use the bathroom. Mr. Haynie refused to take Griffin inside, but allowed him to use the yard. Haynie's wife, Mattie, and a one-year-old son were inside. Haynie and his friend waited until Griffin had left the yard and had walked two blocks. They then left.

A little later, Mrs. Haynie heard knocking on the front door. She asked the identity of the person there but received no response. She then heard the person leave the front porch, and a few minutes later she heard beating on the side window. After the beating stopped, Griffin kicked in the front door, entered the house, knocked the telephone from Mrs. Haynie's hand, and slapped her. Griffin told Mrs. Haynie her husband owed him money. Griffin then picked up the baby, threw him to the end of the couch, and raped Mrs. Haynie. Mrs. Haynie testified that Griffin told her he knew her from a bar. The Haynies denied prior acquaintance with Griffin.

Detective Ursery came to the Haynie home upon being informed Mrs. Haynie had been raped. He found Mrs. Haynie in an emotional state. She gave a description of her assailant, which was dispatched over police radio. Mrs. Haynie told Ursery the man was carrying a transistor radio. Officer Koutouc picked up Griffin, who was carrying a transistor radio, fourteen blocks from

the Haynie home. Griffin said he was jogging and had just been with his girlfriend.

Griffin was taken to the Haynie home where Mr. Haynie identified him as the person who had been in the yard earlier. The officers placed Griffin under arrest and took him to the hospital where Mrs. Haynie identified him as her assailant.

Griffin said he had known Mrs. Haynie for three weeks prior to the incident and had had sexual relations with her three times. He stated Mrs. Haynie consented to sexual intercourse with him on the evening in question.

Griffin was charged as an habitual offender with burglary and rape. Defense counsel moved *in limine* to exclude evidence of Griffin's prior convictions and to waive the habitual offender bifurcated trial procedure. Both motions were denied, and the jury found Griffin guilty of both charges and sentenced him to two forty-year prison terms.

### *1. Prior convictions*

Griffin alleges the Trial Court erred by allowing his prior convictions to be used for impeachment purposes under A.R.E. 609(a)(1) (1991). He argues allowing the State to introduce convictions similar to the charged offense only to show he was a bad person likely to commit the offenses repeatedly was highly prejudicial.

We find no abuse of discretion. Rule 609(a)(1) provides in part that,

> [f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness.

The Trial Court has considerable discretion in determining whether the probative value of a prior conviction outweighs its prejudicial effect, and that decision will not be reversed absent abuse. *Tackett* v. *State*, 298 Ark. 20, 766 S.W.2d 410 (1989); *Pollard* v. *State*, 296 Ark. 299, 756 S.W.2d 455 (1988).

■ When a defendant chooses to testify, we have consistently allowed prior convictions to be used for impeachment, even when the convictions are of crimes similar to the charged offense. In *Pollard* v. *State, supra,* the appellant was charged with theft and argued the Trial Court should have excluded his prior convictions of grand larceny under Rule 609(a)(1). The appellant's proffered testimony would have placed his credibility in issue and contradicted the victim's version of the facts. There was no abuse of discretion in ruling the probative value of the convictions out-weighed their prejudicial effect. *See also Smith* v. *State,* 277 Ark. 64, 639 S.W.2d 348 (1982).

Griffin cites *Jones* v. *State,* 274 Ark. 379, 625 S.W.2d 471 (1981), in support of his argument that the prejudicial effect of the prior convictions outweighed their probative value. In the *Jones* case we held that a prior plea of *nolo contendere* to rape of a child could not be used for impeachment pursuant to A.R.E. 609(a) in a case in which a similar offense was charged because the jury would be unduly prejudiced due to the nature of the offense. We wrote,

> there are sometimes strong reasons for excluding such proof because of the pressure on lay jurors to believe that "if he did it before he probably did so this time." [Citation omitted.] That is especially true in the case at bar, because sexual abuse of a child is a particularly shameful and outrageous crime.

In *George* v. *State,* 306 Ark. 360, 813 S.W.2d 792 (1991), reh. denied, 306 Ark. 374-A, 818 S.W.2d 951 (1991), the defendant was accused of sexually abusing a small child, and the issue arose whether a previous conviction of a similar offense could be used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" as permitted by A.R.E. 404(b). The Trial Court admitted the evidence, and this Court affirmed, stating that the *Jones* case was overruled to the extent it conflicted.

■ The *Jones* case was not in direct conflict with the decision in the *George* case, although both dealt with prior convictions, because A.R.E. 609(a)(1) was specifically at issue in the *Jones* case, not A.R.E. 404(b). The issue in the *Jones* case, as here, was whether a prior conviction could be used for impeach-

ment rather than whether the prior conviction could be used to show motive, etc. We have, however, limited the *Jones* case to situations where the prior offense is likely to recur as the result of a perversion. For example, in *Simmons* v. *State*, 278 Ark. 305, 645 S.W.2d 680 (1983), Simmons was convicted of capital felony murder with kidnapping as the underlying felony. He argued the Trial Court erred by allowing, as impeachment, evidence of a prior kidnapping conviction and cited the *Jones* case. We held the *Jones* case was not controlling because kidnapping, unlike sexual abuse of minors, is not the sort of offense that one is apt to commit again and again as the result of a perversion. *See also Jones* v. *State*, 282 Ark. 56, 665 S.W.2d 876 (1984).

■ In the case now before us, Griffin's prior convictions which were admitted pursuant to A.R.E. 609(a)(1) were of kidnapping, theft, and burglary. There is no similarity to the facts in the *Jones* case, and we cannot say the Trial Court abused his discretion in permitting the impeachment.

## 2. *Waiver of bifurcated trial*

Griffin argues that, as he was to testify in his own defense thus subjecting himself to impeachment on the basis of his prior convictions, the bifurcated trial procedure did not benefit him and he should have been allowed to waive it.

■ A previously convicted defendant who testifies in his own defense runs a risk that prior convictions will be exposed to the jury twice, once during cross-examination and again during the sentencing phase of the bifurcated trial procedure. Arkansas Code Ann. § 16-90-205 (1987) governs the manner of trying defendants who have been previously convicted. It provides for a bifurcated trial and does not provide for waiver. It states the bifurcated procedure "shall" be adhered to in cases involving habitual criminals.

## 3. *Mistrial*

■ The Trial Court recognized that prejudicial error might have occurred as the result of the prosecutor asking a question tending to elicit from a witness the information that Griffin was incarcerated. The Court predicted, however, that the evidence would not prove to be prejudicial because prior discussion with

counsel had indicated Griffin would take the stand and reveal he had been previously convicted and was incarcerated. The Court proved to be correct, and we find no prejudice.

Affirmed.